## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ASHLEY R. MALANDRINO,
f/k/a/ ASHLEY R. GILLISS,

      Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

C.A. No. 10-670-LPS

---

Stephen A. Hampton, Esquire, GRADY & HAMPTON, LLC, Wilmington, DE.

    Attorney for Plaintiff.

Charles M. Oberly, III, Esquire, United States Attorney, and Heath Benderson, Esquire, OFFICE OF THE UNITED STATES ATTORNEY, Wilmington, DE.

Eric P. Kressman, Esquire, and Eda Giusti, Esquire, SOCIAL SECURITY ADMINISTRATION OFFICE OF GENERAL COUNSEL, Philadelphia, PA.

    Attorneys for Defendant.

---

## MEMORANDUM OPINION

September 18, 2012
Wilmington, Delaware

STARK, U.S. District Judge:

## I.    INTRODUCTION

Plaintiff, Ashley R. Malandrino, f/k/a Ashley R. Gilliss ("Malandrino" or "Plaintiff"),

appeals from a decision of defendant, Michael J. Astrue, the Commissioner of Social Security

("Commissioner" or "Defendant"), denying her claim for Supplemental Security Income ("SSI")

under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383(f). This Court has

jurisdiction pursuant to 42 U.S.C. § 405(g).

Presently pending before the Court are cross-motions for summary judgment filed by

Plaintiff and the Commissioner. (D.I. 16, 20) Plaintiff requests that the Court order an award of

SSI or, in the alternative, remand this case for further analysis by a different administrative law

judge ("ALJ"). (D.I. 17 at 20) Defendant asks the Court to affirm his decision. (D.I. 21 at 20)

For the reasons set forth below, Plaintiff's motion will be granted in part and the Commissioner's

motion will be denied. This matter will be remanded to the Commissioner for further findings

and/or proceedings consistent with this Memorandum Opinion.

## II.    BACKGROUND

### A.    Procedural History

On January 24, 2004, Plaintiff filed an application for SSI alleging disability beginning

December 2, 1992. (D.I. 11 (hereinafter "Tr.") at 54-57) After Plaintiff's application was denied

initially and on reconsideration, she request a hearing before an administrative law judge

("ALJ"). (*Id.* at 23-27, 36-41) A hearing was held on March 2, 2005 before an ALJ, at which

Plaintiff was represented by counsel. (*Id.* at 242-85) Plaintiff and a vocational expert testified at

the hearing. (*Id.*)

1

On February 22, 2005, the ALJ issued a decision in which he denied Plaintiff's application for SSI and determined that Plaintiff was not disabled. (*Id.* at 304) The Appeals Council denied Plaintiff's request for review on June 30, 2005. (*Id.* at 5-7) Therefore, the ALJ's February 22, 2005 decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.981; *Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Having exhausted her administrative remedies, Plaintiff filed a timely appeal with this Court. (Tr. at 335) On March 30, 2007, the Court issued a Memorandum Opinion and remanded the action for further proceedings. (*Id.* at 313-31) In its Memorandum Opinion, the Court determined that the ALJ's hypothetical question to the vocational expert was flawed because it did not include all of Plaintiff's credibly-established limitations. (*Id.* at 313-31)

On remand, Plaintiff was referred for consultative examinations. (*Id.* at 362-80, 414-42) A new hearing was held before the ALJ on September 6, 2007. (*Id.* at 414-42) At this hearing, Plaintiff, her husband, and a vocational expert all testified. (*Id.* at 414-42) On October 12, 2007, the ALJ issued a decision again denying Plaintiff SSI. (*Id.* at 293-304)

Subsequently, on July 15, 2010, the Appeals Council denied Plaintiff's request for review. (*Id.* at 286-89) Thus, the ALJ's October 12, 2007 decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955, 404.981; *Sims*, 530 U.S. at 107.

On August 10, 2010, Plaintiff filed a complaint seeking judicial review of the ALJ's October 12, 2007 decision. (D.I. 2) On May 11, 2011, Plaintiff moved for summary judgment. (D.I. 16) In response, on July 13, 2011, the Commissioner filed a cross-motion for summary judgment. (D.I. 20)

2

## B.   Factual Background

### 1.   Plaintiff's Medical History, Treatment, and Conditions

Plaintiff was seven years old on her alleged onset date and was twenty-two years old at the time of the ALJ's decision on remand. (Tr. at 54) At all times relevant to this decision, Plaintiff was a "younger individual" for purposes of SSI. *See* 20 C.F.R. § 416.963(c). Plaintiff graduated from high school, but stated on forms filed in conjunction with her application for SSI that she attended special education classes and received assistance with reading, writing, language, and math. (Tr. at 71) She is able to speak, read, and write English. (*Id.* at 67) Additionally, Plaintiff has a driver's license. (*Id.* at 247) Plaintiff presented a variety of evidence regarding her mental health, as detailed below.

### a.   Pre-Remand Records

In December 1992, the Milford School District conducted a psychological assessment of Plaintiff, who was seven years old at the time. (*Id.* at 130-33) According to school psychologist Mary S. Stoops, Plaintiff was "of at least Borderline intelligence" with language difficulties in reading comprehension. (*Id.* at 132-33) Dr. Stoops recommended that Plaintiff be considered for eligibility as a special education student. (*Id.* at 133)

JoAnn McIllvan, Plaintiff's former elementary and high school teacher, prepared a letter relating to Plaintiff's disability claim. (*See id.* at 91) Ms. McIllvan reported that Plaintiff had a learning disability and memory retention problems. (*Id.*) Specially, Ms. McIllvan indicated that a "definite learning disability was immediately recognized" upon Plaintiff's entrance into fifth grade. (*Id.*) Testing during 11th grade revealed that some of Plaintiff's "academics were below the minimum score for Grade 2." (*Id.*) Plaintiff graduated high school "vocationally at the 8th

3

grade level – with learning gaps even lower." (*Id.*)

Plaintiff's primary care physician, Robert Wilson, D.O., began treating her in February 2002; he saw her in his office seven times between January 2004 and August 2004. (*Id.* at 164-170) Dr. Wilson's records indicate that Plaintiff presented with depression, insomnia, anxiety, and fatigue. (*Id.* at 164, 169, 170) Dr. Wilson prescribed Lexapro to treat Plaintiff's symptoms. (*Id.* at 169) On March 5, 2005, Dr. Wilson stated:

> [I]t appears that [Plaintiff] has some developmental delays including memory impairments and learning disabilities. These have made it very difficult for her to maintain employment. As a result of her ongoing depression, fatigue, and learning disabilities, it is my opinion that [Plaintiff] is currently not able to sustain a full time job on a regular basis. She will need specialized training, treatment, and assistance if she is to become able to sustain any type of employment.

(*Id.* at 194)

On April 20, 2004, when Plaintiff was nineteen years old, Joseph B. Keyes, Ph.D., evaluated her on behalf of the Delaware Disability Determination Service. (*Id.* at 137) Dr. Keyes reported that Plaintiff "obtained a Full Scale IQ of 84, indicating cognitive functioning in the borderline to average/normal intelligence functioning range." (*Id.* at 140) Dr. Keyes noted that Plaintiff was oriented to time, place, and person, and demonstrated normal memory. (*Id.*) He also stated that Plaintiff was organized, but socially withdrawn. (*Id.* at 141) Dr. Keyes's diagnostic impression was single episode major depressive disorder, a mild language based learning disorder, and a dependent personality. (*Id.*) Dr. Keyes opined that Plaintiff "would do best in work involving primarily routine/repetitive tasks." (*Id.*) Dr. Keyes recommended that Plaintiff not work where a high degree of interpersonal functioning is required. (*Id.* at 143) He

4

found that Plaintiff did not have any impairment in understanding simple instructions, but had a mild impairment in carrying out instructions, performing routine tasks, attendance, and in coping with ordinary work pressures. (*Id.*)

On May 28, 2004, Carlene Tucker-Okine, Ph.D., a state agency psychologist, evaluated Plaintiff's mental residual function capacity. (*Id.* at 144-47) Dr. Tucker-Okine concluded that Plaintiff had some moderate limitations and was dependent on her mother for directions, but could handle repetitive tasks. (*Id.* at 146) Pedro M. Ferriera, Ph.D., a state agency psychologist, affirmed Dr. Tucker-Okine's assessment. (*Id.* at 180, 192)

### b.    March 2, 2005 Pre-Remand Hearing

An administrative hearing was held on March 2, 2005. (*See id.* at 242-85) Plaintiff, her mother, and a vocational expert testified at this hearing. (*See id.*) A complete summary of all testimony presented at this hearing can be found in the Court's earlier Memorandum Opinion. (*See* D.I. 21)

### c.    Post-Remand Records

Joan Gorra, M.D., examined Plaintiff in June 2007. (*Id.* at 363) Plaintiff informed Dr. Gorra that she felt tired and fatigued since the age of seven and that she has celiac disease.[1] (*Id.*) Dr. Gorra diagnosed Plaintiff with a learning disability, fatigue attributed to celiac disease, and depression. (*Id.* at 365) Dr. Gorra completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), setting forth limitations on Plaintiff's ability to work, which primarily stemmed from Plaintiff's "feeling of fatigue." (*Id.* at 368-73)

Plaintiff saw her treating physician, Dr. Wilson, in May 2007 and reported that she had

---

[1]Blood work performed in December 2004 was negative for celiac disease. (Tr. at 393)

felt depressed for the past couple of months. (*Id.* at 384) Specifically, Plaintiff stated that she had recently had a baby and felt like her new son was getting most of her husband's attention. (*Id.*) Dr. Wilson prescribed Zoloft to treat Plaintiff's depression. (*Id.*) In June 2007, Plaintiff reported to Dr. Wilson that, since commencing Zoloft, she was "feeling much better," but that the symptoms seemed to return when she did not take her medication. (*Id.* at 383)

Dr. Keyes, who had examined Plaintiff in 2004, examined Plaintiff again in June 2007. (*Id.* at 374) He noted that Plaintiff had been unemployed since 2004. (*Id.* at 375) Plaintiff informed Dr. Keyes that she had quit all of her jobs because she found them overwhelming and stressful and was unable to keep up the required pace. (*Id.*) Dr. Keyes found that Plaintiff was independent in self-care skills and was able to perform basic household/domestic chores and tasks. (*Id.* at 376) Plaintiff obtained a Full Scale IQ of 83, indicating cognitive functioning in the low average intellectual functioning range. (*Id.* at 377) Dr. Keyes diagnosed Plaintiff with a language-based learning disorder and dysthymic disorder, but ruled out dependent personality disorder. (*Id.* at 378) Dr. Keyes concluded that Plaintiff "performs best on tasks that are routine and repetitive and that involve limited social interpersonal contact." (*Id.*) He stated that Plaintiff "is capable of performing self-care skills and basic activities of daily living" and her "[t]hinking is clear and organized." (*Id.*)

Dr. Keyes also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). (*Id.* at 379) In this evaluation, Dr. Keyes indicated that Plaintiff had no limitation is understanding, remembering, or carrying out simple instructions; no limitation in making judgments on work-related decisions; a mild limitation in interacting appropriately with the public, supervisors, and co-workers; and a mild limitation in responding appropriately to

6

usual work situations and to change in a routine work setting. (*Id.* at 379-80)

### d.    September 6, 2007 Post-Remand Hearing

After remand, a second administrative hearing was held before the ALJ on September 6, 2007, at which Plaintiff was represented by counsel. (*See* Tr. at 416) At the hearing, Plaintiff, Plaintiff's husband, Stephen Malandrino, and a vocational expert testified. (*See id.*)

### i.    Plaintiff's Testimony

Plaintiff testified that she was twenty-two years old and a high school graduate. (*Id.* at 420) She stated that she previously worked at a babysitter, cashier, and receptionist. (*Id.*) Plaintiff also testified that she was married on September 3, 2005 and, subsequently, had a baby. (*Id.* at 421) Plaintiff was not presently employed outside the home and stayed at home taking care of her son while her husband was at work. (*Id.* at 421-22) Plaintiff explained that she requires her husband's assistance in order to complete household chores because she gets very tired and cannot finish tasks she starts. (*Id.* at 424-25) She also testified that she has trouble understanding and remembering instructions from her husband when he tries to teach her how to do things around the house. (*Id.* at 426-27) She is unable to remember a recipe, so she does not usually cook but, instead, heats up food. (*Id.* at 427) She testified that while working at a doctor's office, she would forget what she had been told the day before about how to do her job. (*Id.*) She had similar problems at Walmart. (*Id.* at 427-28)

Plaintiff stated she is under the care of Dr. Wilson, her family physician, for depression and anxiety. (*Id.* at 423) She testified that her medication makes her feel better, but if she stops taking it or forgets to take it, her anxiety and depression return. (*Id.*) Plaintiff stated that her husband often has to remind her to take her medication because she forgets. (*Id.*)

7

### ii.  Plaintiff's Husband's Testimony

Plaintiff's husband, Stephen Malandrino, also testified at the hearing. (*Id.* at 428-33) He

testified that Plaintiff is often sad and depressed and forgets things that he tells her. (*Id.* at 431)

He stated that Plaintiff takes a lot of naps, does not have any hobbies or interests, and talks on the

phone only to her cousin. (*Id.*) He opined that Plaintiff is incapable of working outside the home

due to her fatigue and inability to understand directions. (*Id.* at 433)

### iii.  Vocational Expert's Testimony

A vocational expert, Christina Beatty Cody, also testified at the hearing. (*See id.* at 433-

41) The vocational expert testified that Plaintiff's past relevant work as a babysitter was

medium, semi-skilled work; her past relevant work as a cashier was light, semi-skilled work; and

her past relevant work as a file clerk was light, semi-skilled work. (*Id.* at 434) The ALJ asked

the vocational expert the following question:

> Say you have a hypothetical individual, a younger individual, with
> a twelfth grade education. Prior work history is similar to that of
> the claimant. This hypothetical individual might be capable of
> performing work activity at a medium level of exertion as defined
> in the Dictionary of Occupational Titles with the following
> provisals: any jobs that would have to be just simple routine in
> nature and wouldn't involve a great deal of public contact. With
> those limits, any of the past jobs possible or are there any other
> jobs?

(*Id.* at 434) In response, the vocational expert testified that, despite those limitations, such an

individual could perform medium work as a dietary aide, light work as a gate guard, and

sedentary work as a final assembler. (*Id.* at 435)

When the ALJ asked the vocational expert to assume the limitations identified by Dr.

Keyes in June 2007, the vocational expert stated that those limitations would not preclude

8

performance of the named representative jobs. (*Id.* at 435-36) When further asked to assume the limitations set forth by Dr. Gorra in June 2007, the vocational expert testified that those limitations also would not preclude performance of the named representative jobs. (*Id.* at 437)

In response to questioning from Plaintiff's attorney, the vocational expert testified that if Plaintiff's performance was inconsistent to the extent that her productivity was decreased by fifteen percent because she was not able to remember what she had been told day to day, then Plaintiff could still perform the assembly position job because, for that job, there are different tasks every day. (*Id.* at 439-40) However, if Plaintiff had to nap for an hour to an hour and a half per day, then Plaintiff would be precluded from performing all jobs. (*Id.* at 440)

### 4. The ALJ's Findings

On October 12, 2007, the ALJ issued the following findings:[2]

1.  The claimant has not engaged in substantial gainful activity since January 12, 2004, the application date (20 C.F.R. 416.920(b) and 416.971 *et seq.*).

2.  The claimant has the following severe impairments: learning disorder and depression (20 C.F.R. 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I (20 C.F.R. 416.920(d). 416.925 and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium exertional work as defined in the Dictionary of Occupational Titles, with lifting/carrying up to 50 pounds frequently and over 50 pounds occasionally, sitting 8 hours, standing/walking 8 hours, no limitation on the use of upper or lower extremities, occasional climbing of stairs, ramps, ladders or scaffolds, frequent stooping, kneeling, crouching and crawling, occasional exposure to unprotected heights, humidity and wetness, dust, odors, fumes, and pulmonary irritants, extreme cold,

---

[2]The ALJ's factual findings have been extracted from his decision, which interspersed factual findings and commentary. (Tr. at 295-304)

9

> extreme heat, vibrations, no more than moderate exposure to noise, and work
> which is simple and routine in nature, with minimum public contact.

5.  The claimant is unable to perform any past relevant work (20 C.F.R. 416.965).

6.  The claimant was born on February 28, 1985 and was 18 years old, which is
    defined as a younger individual aged 18-49, on the date the application was filed
    (20 C.F.R. 416.963).

7.  Based on school records (Exhibit 8E), the claimant, although she graduated from
    high school, has a limited education and is able to communicate in English (20
    C.F.R. 416.964).

8.  Transferability of job skills is not material to the determination of disability
    because using the Medical-Vocational Rules as a framework supports a finding
    that the claimant is "not disabled," whether or not the claimant has transferable
    job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

9.  Considering the claimant's age, education, work experience, and residual
    functional capacity, there are jobs that exist in significant numbers in the national
    economy that the claimant can perform (20 C.F.R. 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act,
    since January 12, 2004, the date the application was filed (20 C.F.R. 416.920(g)).

## III.  LEGAL STANDARDS

### A.  Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine

issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10

(1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must be

supported either by citing to "particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including

those made for the purposes of the motions only), admissions, interrogatory answers, or other

10

materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 411 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

11

## B.  Review of the ALJ's Findings

The Court must uphold the Commissioner's factual decisions if they are supported by

"substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Monsour Med. Ctr. v. Heckler*, 806

F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the

evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546,

552 (3d Cir. 2005). As the United States Supreme Court has noted, substantial evidence "does

not mean a large or significant amount of evidence, but rather such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*,

487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the

Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh

the evidence of record. *See Monsour*, 806 F.2d at 1190. The Court's review is limited to the

evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95

(3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the

Appeals Council or the District Court as a basis for remanding the matter to the Commissioner

for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*,

239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be

disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537

F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that:

> A single piece of evidence will not satisfy the substantiality test if
> the [Commissioner] ignores, or fails to resolve, a conflict created
> by countervailing evidence. Nor is evidence substantial if it is
> overwhelmed by other evidence – particularly certain types of

12

> evidence (e.g., that offered by treating physicians) – or if it really
> constitutes not evidence but mere conclusion.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).

Thus, the inquiry is not whether the Court would have made the same determination but,

rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d

1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently,

it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by

substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV. DISCUSSION

### A. Disability Determination Process

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of

insurance benefits to persons who have contributed to the program and who suffer from a

physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Title XVI of the

Social Security Act provides for the payment of disability benefits to indigent persons under the

SSI program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of both DIB and SSI

as the inability to do any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental

impairment or impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B); *see also Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

13

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (mandating finding of non-disability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) (mandating finding of non-disability when claimant's impairments are not severe), 416.920(a)(4)(ii). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating claimant is not disabled if able to return to past

14

relevant work); *Plummer*, 186 F.3d at 428. A claimant's RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter*, 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer*, 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of non-disability when claimant can adjust to other work); *Plummer*, 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a vocational expert. *See id.*

## B.  Malandrino's Arguments on Appeal

Malandrino presents five arguments on appeal: (1) the ALJ erred by failing to respond properly to Plaintiff's request to have Dr. Keyes attend the hearing; (2) the ALJ gave an improper amount of weight to the opinion of Dr. Keyes; (3) the ALJ failed to evaluate properly and assess the testimonial and documentary evidence in the file concerning Plaintiff's limitations; (4) the ALJ's hypothetical question to the vocational expert did not accurately reflect all limitations established by the record; and (5) the ALJ erred in finding that Plaintiff's fatigue was not a severe

15

impairment.

## 1. Whether the ALJ failed to properly respond to Plaintiff's request to have Dr. Keyes attend the hearing

Plaintiff first argues that the ALJ erred when he failed to evaluate her request for a

subpoena to compel Dr. Keyes to attend the hearing. (D.I. 17 at 12) However, the record

demonstrates that the ALJ did evaluate Plaintiff's request for a subpoena. At the hearing, the

ALJ stated that he "noted [Plaintiff's] . . . written objection to the two [consultive examiners]"

and was "going to overrule them." (Tr. at 417) The substance of Plaintiff's objection to the two

consultive examiners was that the ALJ should not be able to rely on their medical opinions

without compelling their attendance at the hearing so that Plaintiff could cross-examine them.

(Tr. at 346) It was within the discretion of the ALJ to deny Plaintiff's subpoena request. *See* 20

C.F.R. §404.950(d)(1) (stating ALJ may subpoena witnesses at request of party where

"reasonably necessary for the full presentation of the case").

Plaintiff has presented no evidence that Dr. Keyes's presence at the hearing was necessary

for full presentation of the case.[3] To the contrary, the Court concludes that Dr. Keyes's presence

at the hearing was not necessary for a full presentation of the case because Plaintiff's attorney

had the opportunity to point out the alleged inconsistencies in Dr. Keyes's two written opinions

during the hearing even without Dr. Keyes's presence. Thus, the ALJ did not abuse his

---

[3]Indeed, Plaintiff failed to comply with the requirements of 20 C.F.R. § 404.950(d)(2), as Plaintiff did not "state the important facts that the witness or document is expected to prove . . . and indicate why these facts could not be proven without issuing a subpoena." Plaintiff's request merely stated that "[i]f [the ALJ] intend[s] to give weight to Dr. Keyes' opinions, then [Plaintiff] request[s] that he attend the next hearing so that [Plaintiff] can ask him questions concerning his opinions;" her request also discussed alleged inconsistencies among the documentary evidence that the ALJ had to consider. (Tr. at 345-46)

discretion in denying Plaintiff's request to subpoena Dr. Keyes. *See generally Del Valle v. Astrue*, 2011 WL 4470709, at *6 (E.D. Pa. Sept. 23, 2011) (noting that "ALJ has broad discretion" in assessing whether subpoena is necessary); *see also generally Torres v. Barnhart*, 139 Fed. Appx. 411, 414 (3d Cir. July 14, 2005) (concluding ALJ did not abuse discretion in denying subpoena request where subpoena was not necessary for full presentation of claimant's case).

Additionally, Plaintiff argues that the ALJ committed legal error by failing to provide her written notification of denial of the subpoena request and failing to enter this denial on the record, as required by HALLEX I-2-578(D). (D.I. 17 at 12) However, failure to comply with the HALLEX provision is not legal error. *See Bordes v. Comm'r of Soc. Sec.*, 235 Fed. Appx. 853, 859 (3d Cir. May 18, 2007) (stating HALLEX provisions "lack the force of law and create no judicially-enforceable rights"). Accordingly, the ALJ did not commit legal error when he failed to issue a written denial of Plaintiff's subpoena request.

### 2. Whether the ALJ erred in giving controlling weight to the opinion of Dr. Keyes

Next, Plaintiff argues that the ALJ erred in giving controlling weight to Dr. Keyes's opinions because they are internally inconsistent and also inconsistent with other evidence in the record. (D.I. 17 at 12) The Commissioner responds that there are no inconsistencies between Dr. Keyes's opinions and other evidence in the record. (D.I. 21 at 17-18)

The Court concludes that the ALJ did not err in giving controlling weight to Dr. Keyes's opinions. Dr. Keyes's opinions are consistent with medical evidence in the record. Following examinations in 2004 and 2007, Dr. Keyes concluded that Plaintiff was able to perform routine, repetitive tasks, involving limited interpersonal contact. (Tr. at 141, 378) Dr. Keyes's

17

conclusion is consistent with the findings of two state agency psychologists and with the opinion of Plaintiff's former employer – all of whom indicated Plaintiff could perform routine tasks that did not involve much interpersonal contact. *(See id.* at 63, 144-47, 192)  Additionally, Plaintiff's own testimony that she was able to care for her young son on a full-time basis without assistance from others supports Dr. Keyes's assessment. *(See id.* at 63, 144)

Plaintiff identifies some apparent inconsistencies within Dr. Keyes's opinions. (D.I. 17 at 12)  However, the presence of inconsistencies in a medical expert's opinions does not compel an ALJ to disregard those opinions. *See Dunkle v. Comm'r of Soc. Sec.*, --- F. Supp. 2d ----, 2011 WL 1930619, at *10 (W.D. Pa. May 19, 2011). In any event, Dr. Keyes's opinions were not truly inconsistent. Dr. Keyes noted that Plaintiff relied on her mother to provide assistance with daily activities, and this was reflected in Dr. Keyes's determination that Plaintiff had a "mild impairment" in both her ability to understand simple instructions and perform routine tasks. (Tr. at 138-39, 142-43) Dr. Keyes supported his finding that Plaintiff was independent in her self-care skills by noting that she "is able to perform routine household/domestic chores." *(Id.* at 139) Further, Dr. Keyes accounted for his finding that Plaintiff "has no friends and is socially detached" in determining that she had a mild impairment in her ability to interact with the public, supervisors, and co-workers. *(Id.* at 378-80) Additionally, any inconsistencies between specific findings in Dr. Keyes's 2004 and 2007 opinions appear to reflect the passage of time and performance of a new evaluation.

### 3.   Whether the ALJ properly evaluated the testimonial and documentary evidence concerning Plaintiff's limitations

Plaintiff argues that the ALJ failed to consider, discuss, and weigh all probative evidence that was inconsistent with Dr. Keyes's findings. (D.I. 17 at 15) The Court concludes that the

18

ALJ properly considered, discussed, and weighed all probative evidence present in the record. Specifically, the ALJ noted that he considered the "claimant's school records and statement from her past employer." (Tr. at 301) The ALJ discussed in detail the evidence that was contrary to the findings of Dr. Keyes and noted that the RFC adequately addressed these limitations. (*Id.*) The record further demonstrates that the ALJ considered the testimony of Plaintiff, her husband, and her mother. (*See id.*) Moreover, the ALJ discussed his rationale for giving controlling weight to the assessments of Drs. Keyes and Gorra and giving less weight to the opinion of Dr. Wilson. (*Id.* at 303)

## 4. Whether the ALJ's hypothetical question to the vocational expert reflected all limitations established by the record

Plaintiff contends that the ALJ's hypothetical question to the vocational expert contained erroneous information and did not include all of her established limitations. (D.I. 17 at 17) The Commissioner responds that ALJ's hypothetical question reflected all of Plaintiff's established limitations and was accurate. (D.I. 21 at 18-19)

Because Plaintiff established that she is unable to return to her past employment, the burden of production shifted to the Commissioner to "demonstrate that the claimant is capable of performing other available work in order to deny a claim of disability." *Plummer*, 186 F.3d at 428; *see also* 20 C.F.R. § 404.1520(f). The Commissioner must identify at least one occupation that exists in significant numbers in the national economy that Plaintiff can perform. *See Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987). A vocational expert's answer to a hypothetical question can be considered substantial evidence only when the question reflects all of the claimant's impairments that are supported by the record. *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). However, the ALJ need not include any impairments or limitations

19

that are not "medically established" by the record. *See Rutherford v. Barnhart*, 399 F.3d 546,
554 (3d Cir. 2005).

In this case, the ALJ limited the hypothetical claimant to performing work at a medium
level of exertion with limited public contact, in jobs that are simple and routine in nature. (Tr. at
434) Additionally, the ALJ stated that the hypothetical claimant had a "twelfth grade education."
*(Id.)*

Plaintiff's argument that the ALJ erred by failing to mention Plaintiff's dependent
personality and fatigue is unpersuasive because these impairments were not medically established
by the record. Although Plaintiff indicated that she was dependent upon her mother at some
points, her own testimony reflects that she was able to care for her young son during the day
without assistance from others. *(Id.* at 421-22) In his 2007 evaluation, Dr. Keyes explicitly
found that Plaintiff did not suffer from dependent personality disorder. *(Id.* at 378) Further, the
ALJ noted that Plaintiff has never been diagnosed with a disease that would cause fatigue;
indeed, all laboratory studies for diseases causing fatigue were negative. *(Id.* at 302)

Moreover, the ALJ was not required to include Plaintiff's depression in his hypothetical
question. Although Plaintiff had been diagnosed with depression, the ALJ observed that the
treatment notes of Dr. Wilson and Plaintiff's own testimony established that Plaintiff's
depression was under good control as long as Plaintiff took her medication. *(Id.)* The ALJ
concluded that, based on the medical evidence and opinion of Dr. Gorra, Plaintiff's depression
had no impact on her ability to perform medium-skill level work. *(Id.)*

Nevertheless, the ALJ's hypothetical was deficient for the reason that it did not include
all of Plaintiff's mental limitations. The hypothetical related to a claimant who had a "twelfth

20

grade education." (*Id.* at 434) Although Plaintiff did attend high school (*Id.* at 420), she did not obtain a twelfth grade education. Instead, as the ALJ's findings establish, Plaintiff has a severe impairment learning disorder and was "in a program for vocational students, with a high school curriculum based on fifth through eight grade materials." (*Id.* at 296) The fact that Plaintiff attended twelfth grade is insufficient, here, to support a finding that she received a twelfth grade education. *See* 20 C.F.R. 404.1564(b) ("[T]he numerical grade level that you completed in school may not represent your actual educational abilities. . . . [I]f there is no other evidence to contradict it, we will use your numerical grade level to determine your educational abilities."). The record evidence indicates that Plaintiff "graduated vocationally at the 8th grade level." (Tr. at 91)

Defendant argues that even if the hypothetical question posed to the vocational expert was flawed, the error was harmless because the ALJ limited the Plaintiff to unskilled work, and the representative jobs do not require a twelfth grade education. (D.I. 21 at 19) Reviewing the entire record here, the Court does not agree that the error was harmless. *See generally Crock v. Astrue*, 2010 WL 2640324, at \*8 (W.D. Pa. July 1, 2010) ("The Commissioner cannot cure his own failure of proof simply by arguing that he would have been able to meet his burden if the ALJ's hypothetical had been properly articulated."); *see also id.* at \*7 (stating Commissioner cannot meet burden "by showing that jobs exist in the national economy that are consistent with *someone else's* (i.e., a less limited individual's) residual functional capacity and vocational background").

Because the hypothetical question posed to the vocational expert was flawed, the Court concludes that the Commissioner's decision is not supported by substantial evidence.

21

### 5.   Whether the ALJ properly accounted for Plaintiff's complaints of fatigue

Finally, Plaintiff contends that the ALJ improperly determined that Plaintiff's well-documented complaints of fatigue did not constitute a severe impairment. (D.I. 17 at 19) However, no medical doctor ever diagnosed Plaintiff with an underlying disease which would cause her fatigue. Moreover, the record demonstrates that the ALJ did consider Plaintiff's complaints of fatigue. The ALJ asked the vocational expert to take into account Dr. Gorra's findings (which were primarily based on Plaintiff's complaints of fatigue due to undiagnosed celiac disease). (Tr. at 436) Thus, the ALJ properly accounted for Plaintiff's complaints of fatigue.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and denied in part. The Commissioner's motion for summary judgment is denied. This matter is remanded to the Commissioner for further proceedings consistent with the Memorandum Opinion.[4] An appropriate Order follows.

---

[4]The Court finds no reason to remand this case to a different ALJ than handled it previously.

22